1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA

9    ARNELL M. PRATO, D.D.S., P.L.L.C., doing
     business as DOWN TO EARTH DENTAL, on
10   behalf of itself and all others similarly situated,          No.

11                                         Plaintiff,

12          v.                                                      **CLASS ACTION COMPLAINT**

13   PATTERSON COMPANIES, INC., HENRY                               **JURY TRIAL DEMANDED**
     SCHEIN, INC., and BENCO DENTAL
14   SUPPLY COMPANY,

15                                        Defendants.

16

17          Plaintiff Arnell M. Prato, D.D.S., P.L.L.C., doing business as Down to Earth Dental,

18   ("Plaintiff") brings this antitrust action on behalf of itself and all others similarly situated who have

19   purchased dental equipment and supplies (collectively, "Dental Products") directly from Patterson

20   Companies, Inc., Henry Schein, Inc., and/or Benco Dental Supply Company (collectively,

21   "Defendants"). Plaintiff alleges the following based upon personal knowledge as to matters

22   relating to Plaintiff and upon information and belief as to all other matters:

23

24                            **I.        INTRODUCTION**

25          1.      Plaintiff has stepped forward to pursue this lawsuit because Defendants have

26   conspired to maintain and extend their dominant collective market power in the market for

CLASS ACTION COMPLAINT - 1

distribution of Dental Products by acting in concert to unlawfully maintain and raise barriers to entry through:

- Defendants' coordinated refusal to continue doing business with Dental Product manufacturers that allow actual and potential rival distributors to distribute their products;

- Defendants' coordinated refusal to continue sponsoring dental association annual trade shows when the dental association endorsed or partnered with lower-cost distributors; and

- Defendants' coordinated spread of fear, uncertainty, and doubt about whether dentists who purchased Dental Products from a lower-cost distributor would receive the Dental Product purchased or necessary services and repairs relating thereto.

2.      This anticompetitive conduct has enabled Defendants to overcharge customers who purchase Dental Products directly from Defendants for their purchases, including Plaintiff.

3.      This action seeks to recover from Defendants all improper overcharges paid above the competitive price that would have prevailed absent the conduct described above and to prevent Defendants from continuing this conduct, thereby allowing entry by effective competitors into the market for Dental Products, resulting in lower prices in the future.

## II.      JURISDICTION AND VENUE

4.      The claims alleged in this Complaint arise under Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1, and Plaintiff seeks treble damages pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15(a). Plaintiff also seeks injunctive relief pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26. This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331 and 1337(a).

5.      Venue is proper in this District under 28 U.S.C. § 1391(b) and 15 U.S.C. § 22 because (a) Plaintiff is located, licensed, and transacts business in this District; (b) Defendants reside, transact business, committed an illegal or tortious act, have an agent, or are found in this

CLASS ACTION COMPLAINT  - 2

District, and (c) a substantial portion of the events described below have been carried out in this District.

## III.    PARTIES

### A.    PLAINTIFF

6.    Plaintiff Arnell M. Prato, D.D.S., P.L.L.C., doing business as Down to Earth Dental, ("Plaintiff") is a private dental practice located in Tacoma, Washington. At all relevant times, Plaintiff directly purchased Dental Products from Henry Schein, Inc., Patterson Companies, Inc., and/or Benco Dental Supply Co. Inc. and was harmed by paying inflated prices for those products as a result of the misconduct alleged herein.

### B.    DEFENDANTS

7.    Defendant Henry Schein, Inc. ("Henry Schein") is the largest distributor of Dental Products in the United States. Henry Schein is incorporated in Delaware, and its principal place of business is in Melville, Long Island, New York. It sells Dental Products to dental practices and laboratories nationwide, including those in this District.

8.    Defendant Patterson Companies, Inc. ("Patterson") is the second largest distributor of Dental Products in the United States. Patterson is incorporated in Minnesota, and its principal place of business is in St. Paul, Minnesota. It sells Dental Products to dental practices and laboratories nationwide, including those in this District.

9.    Benco Dental Supply Co. Inc. ("Benco") is the third largest distributor of Dental Products in the United States. Benco is incorporated in Delaware, and its principal place of business is in Pittston, Pennsylvania. It sells Dental Products to dental practices and laboratories nationwide, including those in this District.

CLASS ACTION COMPLAINT  - 3

## C.   CO-CONSPIRATORS AND AGENTS

10.    Various other individuals, firms and corporations, not named as defendants herein, may have participated as co-conspirators with Defendants and performed acts and made statements in furtherance of the conspiracy. Plaintiff reserves the right to name some or all of those individuals or entities as defendants.

11.    Whenever this Complaint references an act, deed or transaction of any corporation or company, the allegation means that that entity engaged in the act, deed or transaction by or through its officers, directors, agents, employees or representatives while they were actively engaged in the management, direction, control, or transaction of the entity's business.

## IV.   TRADE AND COMMERCE

12.    The activities of Defendants and their co-conspirators, as described herein, were within the flow of and substantially affected interstate commerce.

13.    During the Class Period, Defendants and their co-conspirators sold substantial quantities of Dental Products in a continuous and uninterrupted flow of interstate commerce, including through and into this District.

14.    Defendants' conduct caused direct, substantial, and reasonably foreseeable and intended anticompetitive effects upon interstate commerce within the United States.

## V.   FACTUAL ALLEGATIONS

## A.   THE DENTAL PRODUCTS INDUSTRY

15.    Dental Products are equipment and supplies that dental practices and dental laboratories purchase and use in their daily business. Examples of dental equipment include dental chairs, dental CAD/CAM systems, and imaging devices. Examples of dental supplies include acrylics, alloys and amalgam, anesthetics, burs, cements and liners, disposable paper and cotton

CLASS ACTION COMPLAINT  - 4

suppliers, endodontic products, fluoride, hand pieces, impression materials, instruments, orthodontics, preventative products, retraction materials, surgical products, sterilization products, waxes, and x-ray films. Dental Products are produced by over three hundred manufacturers.

16.     A significant majority of Dental Products are sold by manufacturers to distributors such as Defendants. Distributors then serve as a "one-stop-shop" for Dental Products customers, offering centralized warehousing, delivery, and billing services that enable customers to avoid carrying large inventories, dealing with numerous vendors, and negotiating numerous transactions. Because customers can achieve the economic benefit of minimizing administrative overhead by purchasing Dental Products from a single distributor, distributors selling only a partial line of Dental Products will not be able to compete effectively with full line firms. Full line distributors are thus able to and do charge customers appreciable amounts for this service.

17.     The premium that full line distributors have been able to charge customers for Dental Products has motivated additional distributors to enter the market. Because of the very significant mark-ups charged by full line distributors, these new entrants can pay manufacturers more for their Dental Products and/or charge customers less for Dental Products and still be profitable.

18.     One entrant in particular posed a serious threat to Defendants' oligopoly profits. SourceOne Dental Inc. ("SourceOne") offers an online marketplace connecting manufacturers of dental products and dentists. SourceOne offers the broad range of products required to compete with Defendants, offers one-stop shopping, and—due to is low-cost structure—can offer Dental Products at significantly lower prices than Defendants.

19.     To become meaningful competitors to Defendants, new competitors must be able to achieve economies of scale and scope by doing several things, including:

CLASS ACTION COMPLAINT  - 5

- offering a wide range of Dental Products from more than 300 Dental Product manufacturers;

- purchasing Dental Products in bulk to minimize per unit costs; and

- selling their large inventory of Dental Products.

SourceOne offered each of these market benefits.

20.     State dental associations have the ability to connect new distributors with the critical mass of new customers necessary to sell their large required inventories of Dental Products. The associations themselves do not purchase Dental Products, but can help facilitate the entry of new distributors by endorsing or partnering with distributors that they perceive to provide benefits to their membership.

21.     In October of 2013, SourceOne launched TDA Perks Supplies, an online sales platform for members of the Texas Dental Association ("TDA"). Following the success of this platform a number of state dental associations around the country indicated an interest in working with SourceOne.

22.     SourceOne in particular, offered an attractive model for state dental associations. Because SourceOne's contracts with its vendors required those vendors to offer progressively lower prices based on increasing sales volumes, state dental associations using SourceOne stood to benefit from the involvement of sister state associations. As a result, state dental associations considering SourceOne had an incentive to, and did, communicate with other state associations to discuss their common interest in partnering with SourceOne.

23.     As described in more detail below, Defendants, however, have thwarted the ability of dental associations to support new entrants like SourceOne by acting in concert to refuse to continue sponsoring their trade shows when the association endorses or partners with lower-cost distributors.

CLASS ACTION COMPLAINT  - 6

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

24.     Moreover, Defendants have also exercised their combined market power in the market for distribution of Dental Products in the United States by acting in concert in refusing to continue doing business with Dental Product manufacturers that allow actual and potential rival distributors, including SourceOne, to distribute their products.

25.     In addition, Defendants have agreed to withhold essential services from dentists who contemplated purchasing from a lower-cost distributor, like SourceOne.

26.     As a result, despite the substantial profits enjoyed by Defendants, the market for the distribution of Dental Products in the United States remains highly concentrated At all relevant times, Defendants have collectively possessed between 80% and 90% of all sales in the market for distribution of Dental Products in the United States.

27.     Defendants' substantial profits were derived at the expense of Plaintiff and other customers who purchase Dental Products in the United States directly from Defendants at inflated prices resulting from Defendants' coordinated conduct.

**B.      THE RELEVANT MARKET**

28.     Because Defendants' anticompetitive conduct constitutes a horizontal group boycott that is a *per se* violation of Section 1 of the Sherman Antitrust Act, Plaintiff does not need to define a relevant market.

29.     In the alternative, if the Court determines that Defendants' conduct must be analyzed under the "rule of reason" standard, the relevant market for purposes of this analysis is the United States market for distributing Dental Products, including offering direct purchasers the convenience of purchasing a variety of suppliers from a single distributor.

30.     While more than 300 dental supply manufacturers exist, most if not all of Dental Products purchasers are small companies or individuals. As such, they lack the time, administrative

CLASS ACTION COMPLAINT  - 7

staff, or economies of scale necessary to individually negotiate contracts—and maintain relationships necessary to make such contracts successful—with hundreds of manufacturers that do not carry a wide range of Dental Products needed to operate a dental practice. There are accordingly no reasonably available substitutes for distributors of a wide range, or full line, of Dental Products.

31.     At all relevant times, Defendants have possessed market power, i.e., the ability to profitably maintain or increase prices significantly above competitive levels without sacrificing sale volume. A small but significant non-transitory price increase by Defendants would not have caused them to lose a significant amount of sales. This is evidenced by Defendants' high profit margins in a market whose structure would suggest this would be a low-margin industry under competitive circumstances.

32.     Products sold by suppliers of specialty Dental Products do not meaningfully temper Defendants' market or pricing power. The burden, expense and inefficiency associated with trying to purchase products from scores of manufacturers is too great for such an alternative to provide a viable alternative to purchasing through distributors like Defendants. Furthermore, the manufacturers themselves lack the ability to effectively distribute their products to thousands of dentists scattered across the country.

33.     Defendants sell Dental Products at prices that substantially exceed their marginal costs and the competitive price. This is evidenced by comparing their high profit margins to the margins obtained by prescription pharmaceutical and other medical product distributors.

## C.     THE ONGOING ANTICOMPETITIVE CONDUCT OF DEFENDANTS

34.     As detailed in a petition filed against Defendant Benco last year by the Texas Attorney General, Defendants have abused their collective market power by privately

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

communicating and agreeing to act in concert to engage in an anticompetitive scheme to foreclose and impede competition, maintain and enhance their market power, and artificially raise prices of Dental Products above competitive levels.

35.     After a year-long investigation of Defendant Benco, the Texas Attorney General concluded that:

- "… Benco and its competitor distributors engaged in ongoing communications over several months about TDA Perks Supplies. They shared information about market players' reactions to the new firm's entry, they collectively developed a response, and they provided reassurances to market participants about the collective response."

- The collective response to this competitive threat by TDA Perks Supplies was two-fold. Benco and its competitor distributors (1) agreed to break with their traditional pattern and boycott the annual TDA meeting held in May 2014 because they perceived that TDA had positioned itself as a competitor to the traditional distributors, and (2) agreed to pressure other distributors and manufacturers to discontinue supplying TDA Perks Supplies and/or end any relationships with manufacturers or distributors that ultimately supplied TDA Perks Supplies in order to stifle the competition provided by the new TDA offering."

- "…Benco and its competitor distributors did not attend the annual TDA meeting, despite the economic gains Benco and other distributors historically derived from the event …"

- "Benco and its competitor distributors contacted other distributors and manufacturers to pressure those entities to discontinue any relationships that ultimately supplied TDA Perks Supplies. As a result of this pressure, other distributors and manufacturers discontinued such relationships, causing TDA Perks Supplies to lose access to products."

36.     Had SourceOne been able to follow its initial success, including prompting other competitors to replicate its model, a nationwide network of such online platforms would have resulted in lower prices for a wide range of Dental Products as a result of the significantly increased competition in the Relevant Market for distribution of Dental Products.

37.     Rather than letting their respective resulting market shares be determined by

CLASS ACTION COMPLAINT  - 9

competition, however, Defendants regularly communicated with each other via e-mail, texts, telephone calls, and in-person meetings.

38.     Ultimately, Defendants agreed to act together to protect their respective market shares through unlawful threats and boycotts of anyone who could help the new competitors to break into their market.

39.     Defendants' conspiracy had three main elements.

**1.     Pressure Placed on Manufacturers**

40.     Defendants agreed to act in concert to collectively pressure and threaten manufacturers to refrain from supplying new lower-priced distributors, like SourceOne, with Dental Products. More specifically, if manufacturers did business with the new distributors, Defendants agreed to discontinue actively promoting, selling, and/or supporting the manufacturers' Dental Products.

41.     Many manufacturers of Dental Products took even the threat of discontinued promotion, sale and/or support from the Defendants seriously because Defendants collectively hold a dominant share of the Relevant Market for distribution of Dental Products and many such manufacturers make substantial portions of their total sales through Defendants. Defendants' mere threats were successful in coercing these manufacturers to cease doing business with the new lower-priced one-stop-shop distributors such as SourceOne.

42.     SourceOne reports that within a few months of unveiling its TDA Perks Supplies program, it had lost access to over three quarters of its top selling products, and reports that certain manufacturers specifically reported that their actions were in response to threats from Defendants.

43.     On the other hand, those few manufacturers that did not rely on Defendants for a substantial portion of their business generally did not cease doing business with SourceOne and

CLASS ACTION COMPLAINT  - 10

the other new competitors.

44.     Defendants' acts of threatening manufacturers were against each Defendant's individual economic self-interest absent their anticompetitive agreement to act in concert to thwart competition by bullying manufacturers who depended on Defendants for a substantial portion of sales. But for the agreement that all Defendants would take the same action, it would have been financially injurious for any one Defendant to do this because a manufacturer would have turned to that Defendant's competitors and the Defendant would have lost market share, revenue, and profits.

### 2.     Pressure and Boycott of Dental Associations

45.     In addition to pressuring manufacturers, Defendants also conspired and agreed to boycott dental association annual trade shows and meetings that endorsed or promoted Source One—or considered endorsing or promoting SourceOne or other new full service, lower-cost distributors. Dental associations depend on the attendance of major Dental Product distributors and their associated manufacturers at these events because revenues from these events account for a major portion of annual income for these associations.

46.     In furtherance of the conspiracy, Defendants threatened to boycott the annual meetings and trade shows of the TDA, Arizona Dental Association ("AZDA"), and the Louisiana Dental Association ("LDA") and did in fact boycott the TDA and AZDA.

47.     Before Defendants could follow through on their threat to the LDA and threaten other dental associations, the LDA decided to abandon plans to endorse SourceOne and other dental associations were deterred from even considering endorsing SourceOne at these events.

48.     These boycotts of dental associations by Defendants were against each Defendant's individual economic self-interest. Attending these events would have allowed the Defendants to

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

market their Dental Products to thousands of prospective and continuing customers. Absent Defendants' anticompetitive agreement to collectively boycott these events, a Defendant that chose to individually boycott these events would lose significant business opportunities and sales to its co-Defendants who attended them. Furthermore, in many cases, distributors that withdrew from the shows lost substantial security deposits.

49.    Defendants' desire to avoid legitimate price competition from low-cost competitors did not start with its conduct aimed at SourceOne.

50.    For example, Archer and White Sales, Inc., ("Archer") filed an antitrust case in the United States District Court for the Eastern District of Texas in 2012 and alleged that certain of the Defendants here engaged in the following similar anticompetitive conduct, among other things:

- The competitor distributors conspired to thwart the growth of a lower-priced distributor of dental supplies in certain areas of the nation;

- The competitor distributors conspired, agreed, and participated in coordinated price fixing by declining to submit competitive bids against horizontal competitors;

- The competitor distributors blocked the lower-priced distributor's membership in the American Dental Cooperative, which aided smaller companies in competing against large national dental supplies distributors like Defendants; and

- The competitor distributors organized boycotts against the lower-priced distributor through threats to stop buying equipment from certain suppliers and to stop selling equipment from certain manufacturers.

The *Archer* case is currently being pursued through arbitration.

### 3.    Fear, Uncertainty, and Doubt Aimed at Dentists

51.    Defendants also acted in concert to spread fear, uncertainty and doubt about the nature and quality of the Dental Products that other new full service, lower-cost distributors sold.

CLASS ACTION COMPLAINT  - 12

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

52.     Defendants discouraged dentists from using other new full service, lower-cost distributors by spreading fear, uncertainty and doubt about the nature and quality of the Dental Products they sold. For example, Defendants conspired and agreed to represent, without regard to the truth or falsity of the representation, that these new distributors sold Dental Products that were altered, counterfeit, expired, sold through unauthorized distribution channels, or otherwise unfit for their intended purpose. As a result, many dentists curtailed, or discontinued entirely, their purchases from these new distributors.

53.     Defendants also discouraged dentists from using other new full service, lower-cost distributors by threatening to withhold service and repair for installed equipment at their dental practices, or to do so after significant delay or at higher prices. Threatened dentists responded by curtailing or eliminating their purchases of Dental Products from the new distributors because these threats imperiled the viability of their dental practices, including the quality and efficacy of the care that these dentists could provide to their patients.

## D.     OPPORTUNITIES TO COLLUDE IN THE MARKET FOR DISTRIBUTION OF DENTAL PRODUCTS ABOUND

54.     The Defendant distributors have multiple opportunities to collude, which combine to increase the potential for successful collusion.

### 1.     Highly Concentrated Market.

55.     When the market is concentrated, it is: (a) easier for entities to coordinate behavior that results in supra-competitive prices to customers; and (b) more difficult for these customers to avoid paying supra-competitive prices.

56.     Economists often use the Herfindahl-Hirschman Index ("HHI") to measure the level of industry concentration.

57.     The market for distribution of Dental Products has an HHI over 3,000.

CLASS ACTION COMPLAINT  - 13

**KELLER ROHRBACK L.L.P.**

1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

58.    The United States Department of Justice considers an HHI value higher than 2,500 to evidence a "highly concentrated" market.

59.    Not only is the market for distribution of Dental Products highly concentrated as measured by the HHI, but Defendants' combined share has been well over 80% at all relevant times and has steadily increased over the past five years.

60.    Defendants have maintained this highly concentrated market at all relevant times through their anticompetitive conduct alleged herein.  Defendants have used their nationwide presence and relationships with dental associations and key Dental Product manufacturers to prevent local and regional distributors from establishing a legitimate nationwide presence that could exert downward pressure on Defendants' pricing.

**2.    High Barriers to Enter the Market.**

61.    In general, barriers to entry prevent new competitors from easily entering a market due to high start-up costs or other obstacles.

62.    High barriers to entry benefit incumbent companies because they protect those established companies' revenues and profits from being whittled away by new competitors seeking to enter the market and win customers with lower prices and profit margins.

63.    Because customers have diminished ability to obtain competitive pricing when barriers to entry are high, incumbent companies have a common incentive to act in concert to maintain and raise the barriers for new potential entrants.

64.    Here, Defendants have acted in concert to increase the already high barriers to entry for distribution of Dental Products by exercising their collective influence over the key gatekeepers to entry into this market: dental associations and Dental Product manufacturers. This conduct has

CLASS ACTION COMPLAINT  - 14

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

increased the ability of Defendants to implement a successful group boycott of the type alleged here to artificially maintain their ability to charge customers supra-competitive prices.

**3.      Relatively Stable Demand.**

65.      In a competitive market with stable or declining demand, firms will compete with each other to maintain their market share by lowering prices to win customers from their competitors.

66.      To maintain profitability in these conditions, existing firms have an incentive to avoid price competition through agreement and coordinated actions. Accordingly, the existence of level or increasing prices and sustained high profit margins in a market with stable or declining demands is consistent with an agreement amongst existing firms to act in concert to exert market power in order to maintain supra-competitive prices.

67.      The market for distribution of Dental Products is, and has been, relatively stable over the past eight years.

68.      Nonetheless, Defendants Henry Schein and Patterson have raised list prices for Dental Products every year since 2005.

69.      As demonstrated in the chart below, this was true even in 2009, when one of the most uncertain economic times since the Great Depression caused dental practice customers to defer dental and other expenses, and caused the demand for Dental Products to fall by more than 2%.

CLASS ACTION COMPLAINT  - 15

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**Comparison of Dental Product Demand and Distributor List Prices**



■ Dental Product Demand    ■ Henry Schein List Prices    ■ Patterson List Prices

70.     This has allowed Defendants to maintain highly profitable margins. For example, in 2010 and 2011, Patterson obtained profit margins as high as 11%.

71.     In contrast, in related health care product markets such as the prescription pharmaceuticals market, distributor profit margins among distributors are much lower. Indeed, AmerisourceBergen, Cardinal, and McKesson—the three largest distributors in the pharmaceuticals market—generally only have profit margins between 0.2% and 1.5%.

**E.     GOVERNMENTAL INVESTIGATIONS**

72.     Governmental entities at both the state and federal level are investigating Defendants for their anticompetitive conduct.

CLASS ACTION COMPLAINT  - 16

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1

### 1.    Texas Investigation

73.    The Texas Attorney General began investigating Defendants for anticompetitive conduct in violation of Texas antitrust statutes in 2014. The investigation resulted in the Texas Attorney General simultaneously filing a Petition and Final Judgment as to its claims against Defendant Benco on April 9, 2015, in which Defendant Benco, among other things: (a) agreed to pay money to the Texas Attorney General for fees and costs associated with the investigation; (b) stipulated to a permanent injunction that prohibits it from acting in concert with other manufacturers and distributors to limit Dental Product supply to distributors and other third parties; and (c) agreed to provide full, complete and prompt cooperation to the Texas Attorney General in relation to its continued investigation and related proceedings against other entities.

### 2.    Arizona Investigation

74.    The Arizona Attorney General also initiated an investigation against Benco and other presently unknown Dental Products distributors for anticompetitive conduct in violation of Arizona law in 2014. The investigation resulted in the Arizona Attorney General issuing Civil Investigative Demands in October 2014. This investigation is ongoing and Benco has produced responsive documents and electronically stored information relating to the investigation.

### 3.    Federal Investigation

75.    The Federal Trade Commission has similarly begun investigating, and continues to investigate, Benco and other presently unnamed Dental Products distributors.

## VI.    DEFENDANTS' DIRECT PURCHASERS WERE INJURED BY DEFENDANTS' COORDINATED AND SUCCESSFUL EFFORTS TO HARM COMPETITION

76.    As alleged above, Defendants have engaged in a continuing conspiracy in restraint of trade in violation of the Sherman Act.

CLASS ACTION COMPLAINT  - 17

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

77.     At all relevant times, Defendants sold substantial quantities of Dental Products in a continuous and uninterrupted flow in interstate commerce to customers located in states other than where Defendants purchased and processed their Dental Products.

78.     Defendants maintained prices at supra-competitive levels by acting in concert to maintain and increase their collective market power through their anticompetitive conduct.

79.     Competitors seeking to expand their geographic reach have been thwarted in their efforts to partner with Dental Product manufacturers and dental associations in order to compete with Defendants as a result of the group boycotts that Defendants successfully, but unlawfully, orchestrated.

80.     The new low-cost distributors would have become viable competitors to Defendants if they had not been illegally prevented from partnering with dental associations and manufacturers as a result of Defendants' conspiracy.

81.     This increased competition to Defendants would have put downward pressure on Dental Product prices and Plaintiff and Defendants' other customers who have and continue to purchase Dental Products from Defendants would have paid and would pay less in the future for Dental Products.

82.     As a result, Defendants have substantially reduced competition for distribution of Dental Products, decreased consumer choice, and caused and continue to cause Plaintiff and other customers who purchase Dental Products directly from Defendants to suffer antitrust injury by having to pay artificially inflated prices for these products.

83.     Injury to Plaintiff and other customers who purchase Dental Products directly from Defendants was a direct and foreseeable result of Defendants' anticompetitive conduct.

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

84.     Defendants' coordinated conduct in orchestrating group boycotts of distributors who attempted to expand their geographic reach foreclosed the entry of new national full-service distributors of Dental Products, thus thwarting new efforts to compete, maintaining Defendants' combined market power, and enabling Defendants to overcharge Plaintiff and other customers for Dental Products.

85.     Defendants' anticompetitive conduct is continuing, as are the overcharges incurred by Plaintiff and the members of the Class as a result of this misconduct.

86.     The full amount of this antitrust injury that Plaintiff and other direct purchasers from Defendants have incurred will be calculated after discovery and upon proof at trial.

87.     Neither the governmental investigations nor private lawsuits brought by distributors trying to compete with Defendants' have disgorged the overcharges that Defendants have unlawfully obtained from their customers as a result of their anticompetitive conduct, and Defendants are continuing to command and obtain supra-competitive prices for Dental Products from their consumers.

88.     While this conduct should be deemed *per se* illegal, if analyzed under the rule of reason, there are no legitimate procompetitive justifications for Defendants' behavior and any purported procompetitive effect could be achieved through less restrictive means. Moreover, any procompetitive effects are substantially outweighed by the anticompetitive effects.

## VII.    CONCEALMENT AND TOLLING

89.     By its very nature, the success of a conspiracy depends on the co-conspirators concealment of its existence. The Texas Attorney General's public filing of its petition against Benco on April 9, 2015 first revealed some of Defendant Benco's anticompetitive conduct and SourceOne's public filing of its complaint against all three Defendants on September 21, 2015

CLASS ACTION COMPLAINT  - 19

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

revealed additional misconduct of Defendants. Nevertheless, those filings provide Plaintiff with little information about some of Defendants' anticompetitive conduct that remains undiscovered and are not pled in this Complaint.

90.     Plaintiff and Defendants' other customers who directly purchased Dental Products from Defendants could not have discovered Defendants' anticompetitive conspiracy through the exercise of reasonable diligence at an earlier time due to the inherently self-concealing nature of this conduct as well as the efforts of Defendants to avoid detection of, and fraudulently conceal, this unlawful conduct.

91.     As noted by the Texas Attorney General, Defendants' employees "interact regularly in person, at various social gatherings, and industry or trade association meetings, and remotely, through company email, personal email, personal cell phone calls, company cell phone calls, and text messaging."   Such interactions provide the means to share anticompetitive information amongst co-conspirator distributors and manufacturers in a manner that precludes detection.

92.     As noted in the *Archer* lawsuit, Defendants allegedly falsely represented to the new, low-cost distributor of Dental Products that the reason that a manufacturer discontinued the distributor's right to sell its products was unilateral and based on legitimate business reasons and falsely represented to Defendants' customers that the prices they paid for Dental Products were fair and reasonable.

93.     Accordingly, the running of any statute of limitations should be tolled with respect to the claims that Plaintiff and Defendants' other customers who purchased Dental Supplies directly from them have as a result of the unlawful agreement amongst Defendants to act in concert and conspire with each other to continue reaping supra-competitive profits.

CLASS ACTION COMPLAINT  - 20

## VIII.   CLASS ACTION ALLEGATIONS

94.    Plaintiff brings this action under Federal Rule of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) on behalf of Plaintiff and the following Class:

> All persons in the United States who directly purchased Dental Products from Henry Schein, Inc., Patterson Companies, Inc. or Benco Dental Supply Company at any time during the period from January 20, 2012 until the conduct challenged in this Complaint ends ("Class Period"). Henry Schein, Inc., Patterson Companies, Inc., and Benco Dental Supply Company and their subsidiaries are not included in the Class. Also excluded from the Class are federal and state entities that directly purchased Dental Products from one or more Defendants.

95.    Members of the class are so numerous that joinder is impracticable. The class includes thousands of private dental practices and dental laboratories.

96.    Defendants' alleged conduct applies generally to the class as a whole.

97.    There are numerous questions of law and fact common to the class, including but not limited to:

A.    the extent to which Defendants collectively possess market power in the Relevant Market for distribution of Dental Products;

B.    whether, through the conduct alleged herein, Defendants maintained or enhanced their collective market power;

C.    whether Defendants agreed with one another to unlawfully boycott competitors, with the aim of lessening competition for the distribution of Dental Products;

D.    whether Defendants agreed to illegally boycott or threaten to boycott dental associations that did or planned to do business with competitors;

E.    whether Defendants agreed to illegally boycott or threaten to boycott Dental Products manufacturers in order to deter manufacturers from doing business with rival competitors of Dental Products;

CLASS ACTION COMPLAINT  - 21

F.      whether Defendants entered into exclusionary agreements that unreasonably restrained trade and impaired competition;

G.      whether Defendants' conduct as alleged herein constitutes a *per se* illegal violation of the federal antitrust laws;

H.      whether, and to what extent, Defendants' conduct caused direct purchasers (members of the Class ) to pay supra-competitive prices or fees, thus incurring antitrust injuries.

These and other common questions of law and fact predominate over any questions affecting only individual members of the Class.

98.      Plaintiff's claims are typical of the claims of the Class because all Class members incurred antitrust injuries in the same way as a result of Defendants' misconduct, and the claims of each Class member arise out of the same core facts and are based on the same legal theories.

99.      Plaintiff will fairly and adequately represent and protect the interests of the Class.

100.      Plaintiff has retained counsel experienced in antitrust class action litigation, and Plaintiff has no interest in this litigation that conflicts with or is antagonistic to the interests of the other members of the Class.

101.      A class action is superior to any other available method for the fair and efficient adjudication of this controversy. Plaintiff is unaware of any difficulty that the Court would encounter in managing the claims of the Class that would preclude class certification.

## IX.      CLAIM FOR RELIEF

**Violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1:
Unlawful Agreements in Unreasonable Restraint of Trade**

102.      Plaintiff incorporates by reference the preceding allegations.

103.      As set forth above, in violation of Section 1 of the Sherman Antitrust Act, Defendants entered into agreements with one another to boycott and threaten to boycott dental

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

associations, Dental Products manufacturers and dentists that were doing business or considering doing business with new lost-cost distributors and other competitors. This conspiracy was a *per se* unlawful group boycott, or alternatively, was an unlawful restraint of trade under the rule of reason.

104. Each Defendant has committed at least one overt act, such as boycotting entities that did business with new low-cost distributors, to further the conspiracy alleged in this complaint.

105. Plaintiff and the members of the Class have been injured in their business or property by Defendants' anticompetitive conduct. The injury that they have suffered consists of paying prices above competitive levels for Dental Products. Such injury is of the type that the antitrust laws were designed to prevent, and flows directly from Defendants' illegal conduct.

106. There are no procompetitive justifications for Defendants' conduct. Even if there any such justification, there are less restrictive alternatives which could achieve any such benefits, and any such benefits are outweighed by the anticompetitive effect of the conduct.

## X.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following:

A. Certification of the Class proposed in this Complaint;

B. Judgment in favor of Plaintiff and the Class Plaintiff seeks to represent and against Defendants, and damages measured as the overcharges that Plaintiff and other members of the Class paid as a result of Defendants' anticompetitive conduct, trebled;

C. Pre- and post-judgment interest;

D. Injunctive relief to prevent further anticompetitive conduct; and

E. Costs of suit, including reasonable attorneys' fees.

CLASS ACTION COMPLAINT  - 23

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1

## XI.    JURY DEMAND

2

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all

3

the claims asserted in this Complaint so triable

4

RESPECTFULLY SUBMITTED this 10th day of February, 2016.

5

KELLER ROHRBACK L.L.P.

6

7

By *s/Lynn L. Sarko*

8

  *s/Mark A. Griffin*

  *s/Amy N.L. Hanson*

9

  *s/Raymond J. Farrow*

Lynn Lincoln Sarko

10

lsarko@kellerrohrback.com

Mark A. Griffin

11

mgriffin@kellerrohrback.com

Amy N. L. Hanson

12

ahanson@kellerrohrback.com

Raymond J. Farrow

13

rfarrow@kellerrohrback.com

1201 Third Avenue, Suite 3200

14

Seattle, WA 98101-3052

15

Telephone:  (206) 623-1900

Facsimile:  (206) 623-3384

16

17

David S. Preminger

dpreminger@kellerrohrback.com

18

1140 Avenue of the Americas, Suite 900

New York, NY  10036

19

Telephone: (646) 380-6690

20

Facsimile: (646) 380-6692

21

***Attorneys for Plaintiff and the Proposed Class***

22

23

24

25

26

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384